IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2026 APR -7 P 1:19

UNITED STATES OF AMERICA,

Plaintiff,

v.

$1,860,520.97 IN FUNDS SEIZED FROM SOUTHERN STATES BANK ACCOUNT NUMBER XXXXXX1434 IN THE NAME OF KEVIN PADGETT;

$28,875.43 IN FUNDS SEIZED FROM SOUTHERN STATES BANK ACCOUNT NUMBER XXXXXX3137 IN THE NAME OF DROP SHIP INTERNATIONAL, OWNED BY KEVIN PADGETT;

$2,391.37 IN FUNDS SEIZED FROM WELLS FARGO BANK ACCOUNT NUMBER XXXXXXXXX9229 IN THE NAME OF KEVIN PADGETT;

$63,555.48 IN FUNDS SEIZED FROM WELLS FARGO BANK ACCOUNT NUMBER XXXXXX1790 IN THE NAME OF CHAMPION HOME SERVICES; and

$18,062.58 IN FUNDS SEIZED FROM WELLS FARGO BANK ACCOUNT NUMBER XXXXXX7139 IN THE NAME OF KEVIN PADGETT,

Defendants.

CIVIL ACTION NO. 2:26-cv- 00247-ECM-SMD

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States brings this Complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1. This is a civil action *in rem* brought pursuant to 18 U.S.C. § 981(a)(1)(A), (C), and (D)(v) and (vi), for forfeiture of $1,860,520.97 in funds seized from Southern States Bank Account Number xxxxxx1434 in the name of Kevin Padgett; $28,875.43 in funds seized from Southern States Bank Account Number xxxxxx3137 in the name of Drop Ship International, owned by Kevin Padgett; $2,391.37 in funds seized from Wells Fargo Bank Account Number xxxxxxxxx9229 in the name of Kevin Padgett; $63,555.48 in funds seized from Wells Fargo Bank Account Number xxxxxx1790 in the name of Champion Home Services; and $18,062.58 in funds seized from Wells Fargo Bank Account Number xxxxxx7139 in the name of Kevin Padgett for violations of 18 U.S.C. §§ 501, 1341, 1343, 1956, and 1957.

## THE DEFENDANTS *IN REM*

2. The defendants consist of $1,860,520.97 in funds seized from Southern States Bank Account Number xxxxxx1434 in the name of Kevin Padgett; $28,875.43 in funds seized from Southern States Bank Account Number xxxxxx3137 in the name of Drop Ship International, owned by Kevin Padgett; $2,391.37 in funds seized from Wells Fargo Bank Account Number xxxxxxxxx9229 in the name of Kevin Padgett; $63,555.48 in funds seized from Wells Fargo Bank Account Number xxxxxx1790 in the name of Champion Home Services; and $18,062.58 in funds seized from Wells Fargo Bank Account Number xxxxxx7139 in the name of Kevin Padgett. The defendants are currently in the possession of the United States Department of Treasury.

## JURISDICTION AND VENUE

3. The United States brings this action *in rem* in its own right to forfeit and condemn the defendants. This Court has subject matter jurisdiction over an action commenced by the United

States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a). This Court also has jurisdiction over this particular action under 18 U.S.C. § 981(a)(1)(A), (C), and (D).

4. This Court has *in rem* jurisdiction over the defendants under 28 U.S.C. § 1355(b) because the acts or omissions giving rise to the forfeiture occurred in this district. Upon the filing of this complaint, the plaintiff requests that the Clerk of Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b)(i), which the plaintiff will execute upon the defendants pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

5. Venue is proper in this district pursuant to 28 U.S.C. §§ 1355 and 1395 because the acts or omissions giving rise to the forfeiture occurred in this district.

6. The defendants, as described above, are now, and during the pendency of this action will be, in the jurisdiction of this Court.

## BASIS FOR FORFEITURE

7. The defendants are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), (C), and (D)(v) and (vi) which provide for the seizure and forfeiture of any property, real or personal, involved in a transaction or attempted transaction in violation of 18 U.S.C.§§ 1956, 1957 or 1960, or any property traceable to such property; any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C.§ 501; and, any property, real or personal, which represents or is traceable to the gross receipts obtained, directly or indirectly, from a violation of 18 U.S.C. §§ 1341 and 1343.

Title 18, United States Code, Sections 501, 1341, 1343, 1956, and 1957, state in part:

> …Whoever makes or prints, or knowingly uses or sells, or possesses with intent to use or sell, any such forged or counterfeited postage stamp, postage meter stamp, stamped envelope, postal card, die, plate, or engraving… shall be fined under this title or imprisoned not more than five years, or both. **18 U.S.C. § 501**.

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. **18 U.S.C. § 1341**.

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or caused to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, . . .or affect a financial institution, . . . shall be fined $1,000,000 or imprisoned not more than 30 years, or both. **18 U.S.C. § 1343**.

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—
(A)(i) with the intent to promote the carrying on of specified unlawful activity; or
(ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or
(B) knowing that the transaction is designed in whole or in part—
(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or
(ii) to avoid a transaction reporting requirement under State or Federal law,
shall be sentenced to a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or imprisonment for not more than twenty years, or both.

For purposes of this paragraph, a financial transaction shall be considered to be one involving the proceeds of specified unlawful activity if it is part of a set of parallel or dependent transactions, any one of which involves the proceeds of specified unlawful activity, and all of which are part of a single plan or arrangement.
(2) Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States—
(A) with the intent to promote the carrying on of specified unlawful activity; or
(B) knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part—
(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or
(ii) to avoid a transaction reporting requirement under State or Federal law,
shall be sentenced to a fine of not more than $500,000 or twice the value of the monetary instrument or funds involved in the transportation, transmission, or transfer, whichever is greater, or imprisonment for not more than twenty years, or both. For the purpose of the offense described in subparagraph (B), the defendant's knowledge may be established by proof that a law enforcement officer represented the matter specified in subparagraph (B) as true, and the defendant's subsequent statements or actions indicate that the defendant believed such representations to be true.
(3) Whoever, with the intent—
(A) to promote the carrying on of specified unlawful activity;
(B) to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or
(C) to avoid a transaction reporting requirement under State or Federal law,
conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, or property used to conduct or facilitate specified unlawful activity, shall be fined under this title or imprisoned for not more than 20 years, or both. For purposes of this paragraph and paragraph (2), the term "represented" means any representation made by a law enforcement officer or by another person at the direction of, or with

> the approval of, a Federal official authorized to investigate or prosecute violations of this section. **18 U.S.C. § 1956**.
>
> Whoever, in any of the circumstances set forth in subsection (d), knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be . . .fined [$250,000] or imprison[ed] for not more than ten years or both. **18 U.S.C. § 1957(a)**.

**FACTS**

8. The facts and circumstances supporting the seizure of the defendant are as follows:

a. Kevin Padgett (Padgett) is self-employed and is the owner of a business known as Drop Ship International. Georgia Secretary of State records show that Padgett established Drop Ship International as a Domestic Limited Liability Corporation on January 23, 2024.

b. Padgett purchased large quantities of counterfeit postage stamps from an unknown vendor. As set forth below, lab analysis of stamps obtained in this case, which consisted of both visual and instrumental examination, determined that these stamps were non-genuine USPS postage produced using offset technology. (see Exhibit A, USPIS Forensic Laboratory Examination Report).

c. Padgett began to sell the counterfeit postage stamps online on a website known as Sweet Deals (also known as SweetJackMerch). Sweet Deals, which is owned by Cumulus Media, is a website designed to allow consumers to purchase various types of merchandise for a discounted price. According to analysis of records from Sweet Deals, Padgett began to sell the counterfeit stamps in or around February 2024.

d. In March 2024, Padgett arrived at the post office in Smith's Station, Alabama and renewed his passport. At the same time, Padgett dropped off a large quantity of USPS Ground Advantage packages to be mailed. The postmaster inspected the packages by manipulating

and feeling the packages. Based upon the postmaster's training and experience, and inspection of the packages, it was suspected the packages contained coils of stamps, and the postal inspection service was notified. Between March 2024 and April 2024, Padgett was seen multiple times dropping off large quantities of USPS Ground Advantage packages at various post offices in Phenix City, Alabama and Smith's Station, Alabama. During that time, Postal Inspection Service instructed postmasters in Phenix City and Smith's Station to send all packages dropped off by Padgett to Postal Inspection in order to document the packages.

e. In April 2024, during documentation of these packages, Postal Inspection obtained a package being sent by Padgett to a customer located in Montgomery, Alabama. Postal inspectors conducted an interview of the customer, who consented to opening the package with the inspectors present. The package was found to contain two coils of USPS Forever Stamps. The customer stated that he purchased the stamps from the Sweet Deals website. The return address on the package received by the customer was listed as Drop Ship International, P.O. Box 4382, Columbus, Georgia 31914 (which is owned by Padgett). Lab analysis of the postage stamps contained in the package indicated that the postage stamps were counterfeit.

f. In October 2024, postal inspectors conducted a controlled buy and purchased postages stamps from Drop Ship International through the Sweet Deals website. Email confirmation of the shipment of postage stamps was received from Drop Ship International. The package received by postal inspectors from Drop Ship International contained postage stamps that were confirmed to be counterfeit after lab analysis.

g. Between July 2024 and January 2025, Customs and Border Protection (CBP) intercepted and seized seven (7) packages of postage stamps that, per a CBP report, contained counterfeit stamps. (see Exhibit B, CBP Incident Report). The packages originated from

China and were addressed to Padgett's home address (per his Alabama driver license) at XXX Lee Road 2091, Phenix City, Alabama 36870. Authentic United States Postal Service postage stamps are manufactured solely in the United States and are never produced overseas. Samples from each of the seven packages were submitted for lab analysis and were found to contain counterfeit stamps. After each seizure, Padgett was notified via letter that the packages were seized due to containing counterfeit stamps.

h. On February 1, 2024, Padgett opened checking account number xxxxxx3137 at Southern States Bank under the name Drop Ship International.

i. According to sales records obtained from Sweet Deals, Padgett began to sell counterfeit postage stamps on Sweet Deals Starting in February 2024. Between February 2024 and December 2024, there were 1792 sales transactions between Drop Ship International and customers through Sweet Deals, of which 1,578 transactions were from the sale of counterfeit postage stamps.

j. Padgett utilized his personal USPS Click-N-Ship and Stamps.com accounts to pay for postage and generate shipping labels to mail the counterfeit stamps via USPS to consumers who purchased them. The postage was paid for with debit card xxxxxxxxxxxx2885 (bearing the names Kevin Douglas Padgett and Drop Ship International) and is attached to Southern States Bank Account xxxxxx3137, controlled by Padgett.

k. Beginning in March 2024, Padgett began to receive deposits from Sweet Deals (listed as SweetJackMerch on the bank statement) from the sale of the counterfeit stamps into his Drop Ship International business account xxxxxx3137 at Southern States Bank. Between February 2024 and December 2024, Padgett received $1,797,026.19 in deposits from Sweet Deals.

According to analysis of sales records from Sweet Deals, only approximately $10,361.77 was derived from the sale of items other than counterfeit postage stamps.

l. Beginning in March 2024, Padgett began writing checks from Southern States Bank Account Number xxxxxx3137 (Drop Ship International) to himself or his other business, Champion Home Services. As shown in the chart below, Padgett wrote 44 checks to himself and/or Champion Home Services totaling $982,532.65 between March 2024 and November 2024.

| Date | Check # | Pay to the Order of | Memo | Amount | Monthly Total | Deposited to : |
|---|---|---|---|---|---|---|
| 3/15/2024 | 5002 | Kevin Padgett | Distribution #1 | $ 30,000.00 | | WF 7139 |
| 3/15/2024 | 5005 | Kevin Padgett | Expense Payoff | $ 65,915.25 | | WF 7139 |
| 3/29/2024 | 5007 | Kevin Padgett | Distribution #2 | $ 40,000.00 | | WF 7139 |
| 3/29/2024 | 5008 | Kevin Padgett | Expense Payoff | $ 65,910.17 | | WF 7139 |
| 4/3/2024 | 5009 | Kevin Padgett | Expense Reimbursement 4/2/24 wire | $ 20,040.00 | | WF 7139 |
| 4/12/2024 | 5010 | Kevin Padgett | Distribution #3 | $ 20,000.00 | | WF 7139 |
| 4/12/2024 | 5011 | Kevin Padgett | Expense Payoff | $ 12,702.23 | | WF 7139 |
| 4/19/2024 | 5013 | Kevin Padgett | Wire Reimbursement | $ 17,540.00 | | WF 7139 |
| 4/19/2024 | 5014 | Kevin Padgett | Dist #4 | $ 40,000.00 | | WF 7139 |
| 4/26/2024 | 5018 | Kevin Padgett | Dist #5 | $ 40,000.00 | | WF 7139 |
| 4/29/2024 | 5019 | Kevin Padgett | Wire Reimbursement | $ 17,525.00 | | WF 7139 |
| 5/3/2024 | 5022 | Kevin Padgett | Dist #6 | $ 20,000.00 | | WF 7139 |
| 5/9/2024 | 5025 | Kevin Padgett | Dist #7 | $ 15,000.00 | | WF 7139 |
| 5/17/2024 | 5026 | Kevin Padgett | Dist #8 | $ 40,000.00 | | WF 7139 |
| 5/17/2024 | 5027 | Kevin Padgett | Wire Reimbursement | $ 17,525.00 | | WF 7139 |
| 5/24/2024 | 5031 | Kevin Padgett | Dist #9 | $ 20,000.00 | | WF 7139 |
| 5/31/2024 | 5033 | Kevin Padgett | Dist #10 | $ 25,000.00 | | WF 7139 |
| 6/7/2024 | 5034 | Kevin Padgett | Dist #11 | $ 20,000.00 | | WF 7139 |
| 6/14/2024 | 5036 | Kevin Padgett | Expense Reimbursement | $ 17,525.00 | | WF 9229 |
| 6/14/2024 | 5037 | Kevin Padgett | Dist 12 | $ 15,000.00 | | WF 9229 |
| 6/20/2024 | 5039 | Kevin Padgett | Dist 12 | $ 20,000.00 | | WF 7139 |
| 6/28/2024 | 5041 | Kevin Padgett | Dist 14 | $ 20,000.00 | | WF 7139 |
| 7/8/2024 | 5044 | Kevin Padgett | Dist 15 | $ 20,000.00 | | WF 7139 |
| 7/12/2024 | 5047 | Kevin Padgett | Exp Reimbursement | $ 21,025.00 | | WF 7139 |
| 7/12/2024 | 5049 | Kevin Padgett | Dist 16 | $ 20,000.00 | | WF 7139 |
| 7/19/2024 | 5050 | Kevin Padgett | Dist 17 | $ 25,000.00 | | WF 7139 |
| 7/25/2024 | 5152 | Kevin Padgett | Dist 18 | $ 25,000.00 | | SS 1434 |
| 8/1/2024 | 5154 | Kevin Padgett | Dist 20 | $ 25,000.00 | | SS 1434 |
| 8/7/2024 | 5156 | Kevin Padgett | Wire Reimbursement | $ 17,525.00 | | SS 1434 |
| 8/7/2024 | 5157 | Kevin Padgett | Dist 21 | $ 5,000.00 | | SS 1434 |
| 8/15/2024 | 5159 | Kevin Padgett | Dist 22 | $ 25,000.00 | | SS 1434 |
| 8/21/2024 | 5162 | Kevin Padgett | Dist 23 | $ 5,000.00 | | SS 1434 |
| 8/29/2024 | 5163 | Kevin Padgett | | $ 21,025.00 | | SS 1434 |
| 8/29/2024 | 5164 | Kevin Padgett | Dist 24 | $ 25,000.00 | | SS 1434 |
| 9/13/2024 | 5166 | Kevin Padgett | Dist 25 | $ 25,000.00 | | WF 7139 |
| 9/18/2024 | 5168 | Kevin Padgett | Wire Reimburse | $ 21,025.00 | | WF 7139 |
| 9/18/2024 | 5169 | Kevin Padgett | Dist 26 | $ 3,000.00 | | UNKNOWN |
| 9/26/2024 | 5171 | Kevin Padgett | | $ 3,250.00 | | SS 1434 |
| 9/26/2024 | 5172 | Kevin Padgett | Dist 27 | $ 11,000.00 | | SS 1434 |
| 10/10/2024 | 5175 | Kevin Padgett | Dist 28 | $ 27,000.00 | | SS 1434 |
| 10/11/2024 | 5176 | Kevin Padgett | Material Reimbursement | $ 21,000.00 | | WF 7139 |
| 10/24/2024 | 5178 | Champion Home Services | Dist 29 | $ 13,000.00 | | WF 1790 |
| 11/7/2024 | 5180 | Champion Home Services | Dist 30 | $ 10,000.00 | | WF 1790 |
| 11/21/2024 | 5182 | Champion Home Services | Dist 31 | $ 14,000.00 | | WF 1790 |
| | | | TOTAL CHECKS WRITTEN TO KEVIN PADGETT/CHAMPION HOME SERVICES | $ 982,532.65 | | |

m. On July 22, 2024, Padgett opened Money Market Account xxxxxx4134 at Southern States Bank.

n. On July 22, 2024, Padgett transferred $1,500,000 from his Wells Fargo Savings Account xxxxxx7139 to his Wells Fargo Checking Account xxxxxxxxx9229.

o. On July 23, 2024, Padgett wrote Check #5291 from his Wells Fargo Checking Account xxxxxxxxx9229 for $1,500,000 to Southern States Bank. $1,250,000 was placed into a Southern States Bank IntraFi Cash Service (ICS) Account (similar to a Certificate of Deposit account). The remaining $250,000 was deposited into a traditional Money Market Account, both of which are linked to Southern States Bank Account number xxxxxx1434, which is owned and controlled by Padgett.

p. On June 30, 2025, Chief United States Magistrate Judge Stephen M. Doyle issued a federal seizure warrant for Southern States Bank Account number xxxxxx1434. The warrant was executed on July 9, 2025, and on July 23, 2025, Southern States Bank sent a wire to the Treasury Executive Office for Asset Forfeiture in the amount of $1,860,520.97 representing the contents of Defendant Southern States Bank Account number xxxxxx1434.

q. On June 30, 2025, Chief United States Magistrate Judge Stephen M. Doyle issued a federal seizure warrant for Southern States Bank Account Number xxxxxx3137. The warrant was executed on July 9, 2025, and on July 23, 2025, Southern States Bank sent a wire to the Treasury Executive Office for Asset Forfeiture in the amount of $28,875.43 representing the contents of Defendant Southern States Bank Account number xxxxxx3137.

r. On June 30, 2025, Chief United States Magistrate Judge Stephen M. Doyle issued a federal seizure warrant for Wells Fargo Bank Account Number xxxxxx7139. The warrant was executed on July 9, 2025, and on July 10, 2025, Wells Fargo Bank sent a Cashier's Check to the U.S. Department of Treasury in the amount of $18,062.58 representing the contents of Defendant Wells Fargo Bank Account Number xxxxxx7139.

s. On June 30, 2025, Chief United States Magistrate Judge Stephen M. Doyle issued a federal seizure warrant for Wells Fargo Bank Account Number xxxxxx1790. The warrant was executed on July 9, 2025, and on July 11, 2025, Wells Fargo Bank sent a Cashier's Check to the U.S. Department of Treasury in the amount of $63,555.48 representing the contents of Defendant Wells Fargo Bank Account Number xxxxxx1790.

t. On June 30, 2025, Chief United States Magistrate Judge Stephen M. Doyle issued a federal seizure warrant for Wells Fargo Bank Account Number xxxxxxxxx9229. The warrant was executed on July 9, 2025, and on July 10, 2025, Wells Fargo Bank sent a Cashier's Check to the U.S. Department of Treasury in the amount of $2,391.37 representing the contents of Defendant Wells Fargo Bank Account Number xxxxxxxxx9229.

## CLAIM FOR RELIEF

WHEREFORE, the United States prays that the defendants be condemned and forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(A), (C), and (D)(v) and (vi) on the grounds that the funds represent property involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957 or 1960, or property traceable to such property; property which constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 501; and, property which represents or is traceable to the gross receipts obtained, directly or indirectly, from violations of 18 U.S.C. §§ 1341 and 1343. The United States further requests it be awarded its costs and disbursements in this action, and for such other and further relief as the Court deems proper and just.

Respectfully submitted this 7th day of April, 2026.

KEVIN P. DAVIDSON
ACTING UNITED STATES ATTORNEY

RUSSELL T. DURASKI
Assistant United States Attorney
131 Clayton Street
Montgomery, Alabama 36104
Telephone: (334) 223-7280
Facsimile: (334) 223-7106
E-mail: Russell.Duraski@usdoj.gov